William **PINKUS**, Petitioner,

v.

Roger **ARNEBERGH**, City Attorney for the City of Los Angeles, Evelle J. Younger, District Attorney for the City of Los Angeles, William H. Parker, Chief of Police for the City of Los Angeles, Peter J. Pitchess, Sheriff of the County of Los Angeles, Thomas C. Lynch, Attorney General for the State of California, Municipal Court of Beverly Hills Judicial District, County of Los Angeles, State of California, Respondents.

No. 66–861.

United States District Court
C. D. California.

Sept. 27, 1966.

Burton Marks, Beverly Hills, Cal., for petitioner.

Harcld W. Kennedy, County Counsel, by Irvin C. Taplin, Jr., Deputy County Counsel, Los Angeles, Cal., for respondents Evelle J. Younger, Los Angeles County Dist. Atty., and Beverly Hills Municipal Court.

Roger Arnebergh, City Atty., Robert B. Burns, Asst. City Atty., by George J. Franscell, Deputy City Atty., Los Angeles, Cal., for respondents Los Angeles City Atty. Roger Arnebergh, Los Angeles City Chief of Police William H. Parker, Los Angeles Board of Police Commissioners.

Thomas C. Lynch, Atty. Gen., by A. Barry Cappello, Deputy Atty. Gen., Los Angeles, Cal., for respondent California State Atty. Gen., Thomas C. Lynch.

HAUK, District Judge.

This is an action for declaratory judgment and injunction brought by the owner and operator of a so-called "arcade" establishment in the unincorporated territory of Los Angeles County, California, where petitioner exhibits and sells "nudie" motion picture films and "nudist" magazines. The method of operation is to exhibit the films in small booths, utilizing "peep show" machines which are activated when customers deposit silver coins for metered showings measured in terms of minutes proportionate to the value of the coins deposited. After viewing the films, the customers can later purchase them in the

same place where the "nudist" magazines may also be viewed and purchased.

Petitioner has been prosecuted and convicted by respondents for violation of California Penal Code §§ 311 and 311.2, the State obscenity statute,[1] and now proceed under the Federal Civil Rights Acts (42 U.S.C. §§ 1981–1985, 1988) seeking the empanelment of a three-judge Federal Court (28 U.S.C. §§ 2281–2284) for a declaration that the films and magazines were not obscene as a matter of law and that the enforcement, operation and execution of the California obscenity statute has deprived and will continue to deprive petitioner of his civil and constitutional rights protected by the First (freedom of speech), Fourth (freedom from unreasonable searches and seizures), and Fourteenth (equal protection of the laws) Amendments of the United States Constitution. Additionally, petitioner also seeks injunctive relief against the various respondent court and law enforcement agencies and officers cf City, County and State to prohibit them from conducting such prosecutions, together with an order compelling the law enforcement agencies and officers to set up a pre-prosecution censorship system to which petitioner could submit future films and magazines for a determination as to obscenity prior to exhibiting and selling them.

Originally coming on for hearing upon petitioner's motion for a preliminary injunction and respondents' motions to dismiss the complaint and motions for summary judgment, extensive evidence was presented by both sides and received by the Court at hearings which ran for four days, including the films and magazines themselves, which were marked as exhibits and viewed by the Court in their entirety throughout lengthy and eventually boring sessions. Detailed and comprehensive affidavits were submitted by respondents covering all stages of the law enforcement procedures followed in the prosecutions of petitioner. Because of this receipt of evidence and by stipulation of the parties the motions to dismiss were treated as motions for summary judgment, all parties having been given reasonable opportunity to present all material pertinent to the issues. Rule 12(b) and Rule 56, Federal Rules of Civil Procedure. Moss v. Hornig, 214 F.Supp. 324, 329–330 (D.Conn.1962); North American Iron and Steel Co. v. United States, 130 F.Supp. 723, 724 (E.D.N.Y.1955); Hibben v. Kuchaj, 117 F.Supp. 55, 56 (N.D.Ill.1953).

After full consideration of the pleadings and the evidence submitted by the parties, after hearing all arguments by the parties, and after full consideration of the points and authorities, presented

---

1. "California Penal Code 311
§ 311. *Definitions*
As used in this chapter:
(a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance.
(b) 'Matter' means any book, magazine, newspaper or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statute or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.

(c) 'Person' means any individual, partnership, firm, association, corporation, or other legal entity.
(d) 'Distribute' means to transfer possession of, whether with or without consideration.
(e) 'Knowingly' means having knowledge that the matter is obscene.
"§ 311.2. *Sending or bringing into state for sale or distribution; printing, exhibiting, distributing or possessing within state*
"Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

to the Court in support of the respective positions of the petitioner and the respondents, the Court now makes its decision, findings of fact and conclusions of law that petitioner's application for a convocation of a three-judge Federal Court be denied, and that summary judgment be entered in favor of respondents.

So that the facts will be clear and the findings incontestably correct, the Court must describe in detail the films and magazines which it viewed, and the actions and gyrations of the female models and actresses in the films, and of the male and female models, actors and actresses in the magazines, whose duplicating displays of obscenity and pornography are the central and only themes of these tiresome titillations.

### FINDINGS OF FACT

1. That the respondent William H. Parker was the Chief of Police of the City of Los Angeles and had been a member of and the General Manager and Chief Administrative Officer of the Police Department of the City of Los Angeles, which Department has the powers and duty of enforcing the laws of the State of California within the territorial limits of the City of Los Angeles, including the apprehension and arrest of persons reasonably believed to be in violation of Penal Code Section 311.2.

2. That William H. Parker died on July 16, 1966.[2]

3. That the respondent, Roger Arnebergh, was and now is, City Attorney for the City of Los Angeles and at all times mentioned in petitioner's complaint, said respondent was and now is, the duly elected and acting City Attorney of the City of Los Angeles, empowered and required by the Charter of the City of Los Angeles to prosecute any and all misdemeanor offenses occurring within the territorial limits of the City of Los Angeles, including prosecution of Penal Code Section 311.2, a misdemeanor offense.

4. That at all times mentioned in petitioner's complaint, respondent, Evelle J. Younger, was and now is, the duly elected and acting District Attorney for the County of Los Angeles, State of California, empowered and charged with the duty of prosecuting any and all felonies within said county and any and all misdemeanor offenses occurring within the unincorporated territory of said County, including prosecution of Penal Code Section 311.2, a misdemeanor offense.

5. That at all times mentioned in petitioner's complaint, respondent Peter J. Pitchess, was and now is, the duly elected and acting Sheriff of the County of Los Angeles, State of California, and pursuant to laws of the State of California charged with the duty of enforcing the law within said County, including the apprehension and arrest of persons reasonably believed to be in violation of Section 311.2 of the Penal Code of the State of California.

6. That at all times mentioned in petitioner's complaint, Thomas J. Lynch was, and now is, the Attorney General of the State of California.

7. That The Municipal Court of the Beverly Hills Judicial District is an aggregate body consisting of two judges for the consideration and action on matters of judicial business.

8. That petitioner, William Pinkus, was at all times mentioned in petitioner's complaint, and now is, licensed by the County of Los Angeles to conduct an arcade business pursuant to a permit issued by respondent Peter J. Pitchess, Sheriff of Los Angeles County and petitioner William Pinkus is, and at all times mentioned in the complaint, was engaged in the business of selling books and magazines in the City and County of Los Angeles.

9. That petitioner William Pinkus, since April, 1964, has demanded that re-

---

2. The Court respectfully takes judicial notice that Chief Parker, honored and respected as an outstanding law enforcement officer in Southern California, the nation and the world, was Chief of Police when the prosecutions complained of took place, but died before the ruling herein.

spondent Peter J. Pitchess provide petitioner with a Board of Review to pass on the obscenity or non-obscenity of films displayed by petitioner in his business establishment. That in addition said petitioner has demanded that respondent Peter J. Pitchess provide him with guidelines or opinions as to which, if any, of the films displayed by petitioner were improper to exhibit and to give petitioner notice and an opportunity to defend or remove said objectionable films from sale or exhibition to the public before any arrest was to be made or any criminal complaint filed. Respondent Peter J. Pitchess refused and still refuses, to do any or all of the foregoing as demanded by petitioner William Pinkus.

10. That petitioner, William Pinkus, and one of his employees, were arrested pursuant to a Warrant of Arrest issued by respondent Municipal Court of the Beverly Hills Judicial District on or about May. 12, 1964, for a violation of California Penal Code Section 311.2, (exhibiting obscene material) in the unincorporated territory of Los Angeles County, by members of the Sheriff's Department of the County of Los Angeles and thereafter prosecuted in the Municipal Court of the Beverly Hills Judicial District in Cases Nos. M12706 and M12707 by Deputies in the Office of the District Attorney of Los Angeles County. At the conclusion of said trial, petitioner was adjudged guilty of exhibiting obscene matter, to wit, the motion picture films identified in said cases, Exhibits 1 and 2, and 56 rolls of other film stipulated as being the same quality and character as Exhibits 1 and 2, in violation of California Penal Code Section 311.2. Said convictions were affirmed on appeal by the Appellate Department of the Los Angeles Superior Court in Cases No. CRA–6101 and CRA–6102. Subsequent to said affirmance, petitioner applied for and was granted a stay of execution of sentence for the purpose of permitting petitioner to apply for a writ of certiorari to the United States

Supreme Court. To date petitioner has not applied for said writ of certiorari.

11. That petitioner, William Pinkus, was arrested pursuant to a Warrant of Arrest issued by respondent, Municipal Court of the Beverly Hills Judicial District, on or about April 6, 1966, for a violation of California Penal Code Section 311.2, (exhibiting and selling obscene material) in the unincorporated territory of Los Angeles County by members of the Sheriff's Department of the County of Los Angeles. The trial of said case is presently pending in the Municipal Court of the Beverly Hills Judicial District as Case No. M15968, and the materials involved therein are. the magazines "Jay Bird Journal," and "Film and Figure #3."

12. That the jurisdiction of the Police Department and the City Attorney of the City of Los Angeles does not include the City of Beverly Hills nor the unincorporated territory of Los Angeles County. That neither Roger Arnebergh nor William Parker, participated in any manner in the arrests and prosecution of petitioner William Pinkus as set forth in Findings No. 10 and 11.

13. With respect to the arrest and prosecution of those suspected of violating Caliornia Penal Code Section 311.2, the procedures followed by respondents Peter J. Pitchess, Sheriff of the County of Los Angeles and Evelle J. Younger, District Attorney of the County are as follows:

With respect to the arrest of those exhibiting alleged obscene films and materials, a Deputy Sheriff personally reviews the films or material and either purchases a copy of said film, or material, or makes notes of that which he has seen. The Deputy Sheriff then takes either the copy of the film or material or the notes to the District Attorney's office for review by a Deputy District Attorney. If, in the opinion of the Deputy District Attorney and the Deputy Sheriff involved, the films or material are obscene as defined by law, the Deputy Sheriff

swears out a complaint against the exhibitor of the films or material and obtains a Warrant of Arrest for the defendant named in the complaint. The Deputy then proceeds to arrest the defendant who has exhibited the allegedly obscene film or other material and as an incident to said arrest, either with or without a search warrant, the Deputy picks up the film or material which is the subject matter of the complaint. Only those films specifically designated in the search warrant or the complaint are seized.

14. The films referred to in Paragraph 4 of petitioner's complaint, and identified as Exhibits 1 and 2 in Cases Nos. M12706 and M12707, were introduced as Exhibits 1 and 2 respectively and viewed by the Court. These Exhibits depict a female in each, nude except for leg-length tights on one and a filmy pair of panties on the other, covering the vaginal area through which the pubic hair was visible. The films consist of the model moving and undulating upon a bed or couch, moving her hands, lips or body, all clearly indicative of engaging in sexual activity, including simulated intercourse and invitations to engage in intercourse. There is no music, sound, story line or dancing other than exaggerated body movements. Again and again the focus of the camera returns to the vaginal and rectal areas clearly showing the pubic hair and the outline of the external portions of the female genital area. On other occasions, the focus of the camera emphasizes the nude breasts of the model. The dominant theme of the films, taken as a whole, is to the prurient interest in sex of the viewer and they are patently offensive in their emphasis of the vaginal, rectal and breast areas and the exaggerated movements of the model. The films are entirely without artistic or literary significance and are utterly without redeeming social importance.

15. The magazines, "Jay Bird Journal," and "Film and Figure #3," referred to in Paragraph 5 of the petitioner's First Cause of Action and Paragraph 2 of the petitioner's Second Cause of Action, were introduced as Exhibits 3, 4 and 5 (Exhibits 3 and 4 being two different issues of "Jay Bird Journal"). Exhibits 3 and 4 consist of numerous and sundry obviously posed pictures of nude women, nude men and women and nude groups of men and women with the focus in most instances on the genital area of the models. The breasts and pubic areas are clearly shown on the female models and the penis of the male model is clearly shown. In some pictures, the female models appear to be shaven so that the external portions of the vaginal area are exposed. In many poses, it appears that the female models intentionally assumed positions requiring them to spread their legs apart to emphasize the genital area. The articles in the magazine are innocuous, dreary and puerile and bear little if any, relationship to the illustrations. Typical is Exhibit 3, wherein forty-one of its sixty-three pages contain pictures of nude females, males and mixed groups. The remaining twenty-two pages consist of an article regarding the granting of mailing privileges to nudist magazines, complete with pictures of various nudes from those magazines, an article on "Topless Barmaids," containing numerous pictures of the same, and a three-page article on Rubens, the painter. There are also three pages of advertising for other nudist publications, together with order forms therefore, and a four-page article on censorship in the past. Exhibit 5 consists of a picture book of nude or almost nude women. In almost every picture, the breasts and pubic area are fully exposed. Again, some models appear shaven so that the external portions of the vaginal area are exposed, and the models in many instances assume positions requiring them to spread their legs to emphasize the vaginal area. Also the pictures are obviously posed and, although posed in an outdoor setting, few of the models are engaged in any normal outdoor activity. The obvious appeal of Exhibits 3, 4 and 5, taken as a whole, is to the prurient interest in sex of the

reader. They are patently offensive and utterly without redeeming social importance.

16. The films, "Erika Von Kessler," "Lilith," "Susanne Lange," and "Carol Turner," referred to in Paragraph 2 of petitioner's Second Cause of Action, were introduced as Exhibits 6a, 6b, 6c and 6d respectively, and viewed by the court. Each film, in black and white photography, portrays a series of individual female models in various positions on beds, couches, chairs and on the floor. Each film follows a pattern wherein the model goes through the process of undressing from a state of partial nudity to complete nudity. During the process, the uncovering, massaging, and display of the bare breasts, as well as the buttocks region, is accentuated. There is no music, sound, story line or dancing other than exaggerated body movements. The films consist of models moving and undulating on the bed, couch, chair or floor, moving her hands, lips and body all clearly indicative of engaging in sexual activity, including sexual intercourse and invitations to engage in intercourse. In some of the films, the sexual activity is more flagrant in that the model is completely nude most of the time, and plays with some type of elongated powder puff in a manner clearly indicative of sexual activity. Each model, without exception, simulates the body position and movements of sexual intercourse, feigns oral copulation together with titillating movement of the lips and feigns masturbation. The movement and picture angles of the camera itself contribute to the intimacy, the drawn out sexuality and the unmistakable participation of the subjects. The obvious appeal of these films, taken as a whole, is to the prurient interest in sex of the viewer. They are patently offensive and utterly without redeeming social importance.

17. That at all times mentioned in petitioners complaint, it was, and it now is, the intention of each of the respondents to fulfill the duties of their respective offices in strict compliance with all legal requirements as contained in the Constitution and laws of the state and nation, and in conformity with court decrees.

18. That at all times mentioned in petitioner's complaint, the respondents, and each of them, acted without malice and in the lawful performance of the duties of their respective offices.

19. No respondent performed any wrongful act which proximately caused injury or damage to petitioner.

20. That procedures are provided by California statutes which furnish standards and guidelines for the apprehension, arrest and prosecution of public offenses committed therein, including violations of Penal Code Section 311.2 which procedures were followed in the arrests and prosecutions of petitioner herein.

21. That the respondent, Thomas C. Lynch, did not participate in any of the arrests and prosecutions, or threatened arrests and prosecutions mentioned in petitioner's complaint on file herein.

22. That it was stipulated by and between the parties through their respective counsel, that all motions to dismiss may be treated as motions for Summary Judgment.

23. That the only agreement among any of the respondents herein was, and is, to prosecute any person whom they reasonably believe to be in violation of Section 311.2 of the Penal Code of the State of California.

24. That no respondent entered into any conspiracy or scheme to enforce Penal Code Section 311.2 or any other law in any illegal, wrongful or arbitrary manner.

25. That the respondents, and each of them, acted in good faith under color of state law at all times mentioned in petitioner's complaint.

26. That the allegations contained in petitioner's complaint, inconsistent with the Findings of Fact herein, are untrue.

27. The following Conclusions of Law, insofar as they may be concluded Findings of Fact, are so found by this court

to be true in all respects. From the foregoing facts the court concludes:

## CONCLUSIONS OF LAW

1. That the acts and conduct of the respondents Roger Arnebergh, Evelle J. Younger, William H. Parker, Thomas C. Lynch and Peter J. Pitchess, with respect to the matters alleged in the complaint, were within the scope and course of their authority, duties, and responsibilities as City Attorney, District Attorney, Chief of Police, Attorney General, and Sheriff, respectively.

2. That after viewing the films and publications referred to in petitioner's complaint, this court is of the opinion that there is reasonable and probable cause to believe said films and publications are obscene and in violation of Section 311 et seq. of the California Penal Code and that since said films and publications are incorporated into the complaint by reference, the complaint does not even formally allege a basis for equitable relief under 28 U.S.C.A. § 2281 et seq., and therefore, petitioner's application for the convocation of a three judge Federal Court is denied. (Idlewild Bon Voyage Liquor Corp. v. Epstein (1961) 370 U.S. 713, 82 S.Ct. 1294, 8 L. Ed.2d 794).

3. The court has viewed the films and publications referred to in petitioner's complaint and is of the opinion that there is reasonable and probable cause to believe said films are obscene and in violation of Section 311 et seq. of the California Penal Code, and therefore the court, in the exercise of its discretion, declines to grant petitioners declaratory relief. Petitioners have an adequate remedy under state law. (Zeitlin v. Arnebergh, 59 Cal.2d 901 (1963) 31 Cal. Rptr. 800, 383 P.2d 152).

4. That no respondent did under color of any statute, ordinance, regulation, custom or usage, subject, or cause to be subjected, the petitioner to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws of the United States or of the State of California.

5. That no respondent conspired to abridge or deny to petitioner any of the rights, privileges or immunities secured by the Constitution or laws of the United States or State of California, or any of the civil rights of petitioner, or deny to petitioner equal protection of the laws.

6. That The Municipal Court of the Beverly Hills Judicial District is not a "person," within the purview and meaning of 42 U.S.C. Section 1981 through 1985.

7. That no statute of California requires a judicial determination of obscenity as a condition precedent to the institution in good faith, of a complaint and/or arrest for violation of the state obscenity laws, nor is such requirement found in the First or Fourteenth Amendment to the Constitution of the United States.

8. That the procedures provided by California law for the arrest and prosecution of persons charged with violation of California Penal Code, Section 311.2, and which procedures were followed by respondents, and each of them, do not and did not abridge or deny to petitioner any of the rights, privileges or immunities secured to him by the Constitution of the United States, nor deny to him due process or equal protection of the law, nor deprive petitioner of any of his civil rights.

9. Respondent Pitchess is not required by law to provide petitioner with a Board of Review to pass upon the obscenity or non-obscenity of the films and publications exhibited and sold by petitioner in his business establishment.

10. Respondent Pitchess is not required by law to provide petitioner with opinions or guidelines as to which, if any, of the films displayed by petitioners are improper, nor are any of the respondents required to give petitioners notice and opportunity to remove or defend objectionable films prior to the making of any arrest or the filing of a criminal complaint.

11. That there has been no showing of any violation of the civil or

**1004**

constitutional rights of petitioner by reason of his arrest and prosecution for violation of Section 311.2 of the California Penal Code with respect to Exhibits 1 and 2 nor by reason of his arrest and pending prosecution for violating Section 311.2 of the California Penal Code with respect to Exhibits 3, 4 and 5. Exhibits 1, 2, 3, 4 and 5 could reasonably be found by a court to be obscene.

12. That there is reasonable and probable cause to believe Exhibits 1, 2, 3, 4 and 5 are obscene as defined by law and the arrest and prosecution of petitioner for exhibiting or selling said exhibits is and would be a constitutional application of a constitutional statute, to wit, Section 311.2 of the California Penal Code.

13. That there is reasonable and probable cause to believe Exhibits 6a, 6b, 6c and 6d are obscene as defined by law and the arrest or prosecution of petitioner for exhibiting or selling said exhibits would be a constitutional application of a constitutional statute, to wit, Section 311.2 of the California Penal Code.

14. That the respondents, and each of them, are immune from suit under the Civil Rights Act for conduct in the performance of their official duties in good faith.

15. That no respondent performed any wrongful or illegal act.

16. That no respondent entered into a conspiracy to perform an illegal or wrongful act.

17. The respondents, and each of them, could and did have reasonable cause to believe that each of the films mentioned in petitioner's complaint were within the ambit and purview of said Penal Code Section 311.2 and as such prosecutable.

18. The respondents, Evelle J. Younger and Peter J. Pitchess acted reasonably and upon probable cause that Exhibits 1 and 2, violated Section 311.2 of the Penal Code of the State of California. The films, Exhibits 1 and 2, reasonably come within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code of the State of California and the prosecution of the petitioner, William Pinkus, did not deprive him of any of the rights, privileges or immunities secured by the Constitution and laws of this state and nation.

19. The respondents, Evelle J. Younger and Peter J. Pitchess, acted reasonably and on probable cause that Exhibits 3, 4 and 5, "Jay Bird Journal," and "Film and Figure #3," violated Section 311.2 of the Penal Code of the State of California. The magazines, Exhibits 3, 4 and 5 reasonably come within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code of the State of California. The prosecution of petitioner, William Pinkus, will not deprive him of any of his rights, privileges or immunities secured by the Constitution and laws of this state and nation.

20. Exhibits 6a, 6b, 6c and 6d reasonably come within the ambit and purview of the material prohibited in Section 311.2 of the Penal Code of the State of California, and the respondents, and each of them, have reasonable and probable cause to believe said Exhibits are obscene as that term is defined by law.

21. The petitioner William Pinkus is collaterally estopped from litigating the obscenity of the films introduced as Exhibits 1 and 2, identified as Exhibits 1 and 2 in The Municipal Court of the Beverly Hills Judicial District as Cases No. M12706 and M12707. (Tietelbaum Furs, Inc. v. Dominion Ins. Co. (1962) 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439).

22. Summary Judgment should be entered in favor of all respondents dismissing the complaint on file herein upon the ground that said complaint fails to state a claim against respondents upon which relief can be granted. There is no genuine issue as to any material fact relating to this action and respondents and each of them are entitled to a judgment against petitioner as a matter of law.

23. The court concludes as a matter of law that it had and has the power to dismiss this action and grant summary judgment; and that, after reviewing all of the pleadings, exhibits to the pleadings consisting of the various films and magazines, admissions, affidavits and all of the matters before this court during the two day hearing, it is the court's duty to dismiss this action by granting summary judgment in favor of all of the respondents.

24. For the same reasons the court concludes as a matter of law that dismissal by the granting of the motion for summary judgment is the court's duty to perform by itself as a single-judge court and that a three-judge court should not be convened.

25. Additionally, the court concludes as a matter of law that it has the power and duty to decide this matter as a single-judge court without convening a three-judge court because, after having reviewed all of the pleadings, exhibits to the pleadings, admissions, affidavits and all of the matters before this court during the hearing, there is no substantial Federal question which requires the convening of a three-judge court under 28 U.S.C. Section 2281. Smith v. California, (9 Cir. 1964) 336 F.2d 530, 534; Pierre v. Jordan (9 Cir. 1964) 333 F.2d 951, 956–957; Blue and Gold Stamps—U-Save Premium Co. v. Sobieski (D.C. 1961) 190 F.Supp. 133, 134–135; Ex Parte Poresky (1933) 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152; Idlewild Bon Voyage Liquor Corp. v. Epstein (1961) 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed. 2d 794.

26. The court viewed at length and completely and in toto each and every one of the films and magazines which are incorporated into the complaint as exhibits and which were the subject matter of the criminal prosecution complained of by petitioners as alleged deprivations of their civil rights in violation of the Civil Rights Acts (42 U.S.C. §§ 1981–1985, 1988). The court concludes as a matter of law that the exhibits and each of them are clearly, unequivocally and incontrovertibly obscene and pornographic in the hard core sense because they come within the reasonable purview and ambit of both the Federal judicial definition of obscenity and hard core pornography, Roth v. United States (1957) 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Mishkin v. New York (1966) 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56; Ginzberg v. United States (1966) 383 U.S. 463, 86 S.Ct. 969, 16 L. Ed.2d 31, and the California statutory definition of obscenity and hard core pornography (California Penal Code Section 311, Zeitlin v. Arnebergh (1963) 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152), so that it is impossible for the court to find any substantial Federal question by way of a deprivation of any civil or constitutional right, whether protected by the Federal Civil Rights Acts (42 U.S.C. §§ 1981–1985, 1988) or by the First, Fourth or Fourteenth Amendments to the Constitution of the United States.

Judgment shall be entered accordingly granting summary judgment in favor of respondents and dismissing the action as to each and all of them.