Clarence VEEN and Claudia Ruddick, aka Claudia Allece, Plaintiffs,

v.

Edward DAVIS, in his capacity as Chief of Police for the City of Los Angeles, Roger Arnebergh in his capacity as City Attorney for the City of Los Angeles, and Los Angeles Police Officer D. Kempton, Defendants.

No. 71–454–AAH.

United States District Court, C. D. California.

April 2, 1971.

Robert H. London, Marks, Sherman, London, Schwartz & Levenberg, a Pro-

fessional Corporation, Beverly Hills, Cal., for plaintiffs.

Roger Arnebergh, City Atty., George J. Franscell, Asst. City Atty., John T. Neville, Deputy City Atty., Los Angeles, Cal., for defendants.

DECISION AND ORDER DENYING TEMPORARY RESTRAINING ORDER; DENYING APPLICATION FOR 3-JUDGE COURT; AND DISMISSING COMPLAINT WITH PREJUDICE

HAUK, District Judge.

This matter came before us in a hearing on March 1, 1971, upon Plaintiff's application for "Order for Return of All Prints of Still Photographs Taken; Temporary Restraining Order; Order to Show Cause." Plaintiffs seek the Temporary Restraining Order to enjoin Defendants from further prosecution of two obscenity cases, Nos. 371,384 and 371,451, now pending before the Municipal Court for the Los Angeles Judicial District, County of Los Angeles, State of California. They also seek a Temporary Restraining Order against any further harassment by way of seizure, citation or arrest of Plaintiffs. These proposed Temporary Restraining Orders are to run pending the return of the Order to Show Cause why they should not be made permanent. Plaintiffs further request an order directing the return of all photographs taken on the 22nd and 27th of October, 1970, at the Vagabond Theater by the Defendants.

The Complaint, which is in two counts —one for injunctive relief and the other for declaratory relief—obviously follows an increasingly apparent trend of smut peddlers under vigorous attack by the City Attorney and the state law enforcement agencies in California to invoke the aid of the federal courts by seeking refuge in the Federal civil rights statutes enacted in the post Civil War period, and the United States Constitution, by asking for Federal intervention to stop and prohibit any and all city, county and state obscenity prosecutions.[1] This trend has been just as vigorously resisted by some federal courts.[2]

THE COMPLAINT

The Complaint alleges the following facts which we accept as true for the purposes of this Order.[3]

Plaintiff, Clarence Veen, at all times mentioned in the Complaint, was and is an assistant manager of the Vagabond Theater which is located on Wilshire Boulevard in the City of Los Angeles, State of California. Plaintiff Claudia Ruddick aka Claudia Allece, was and is a cashier at this theater.

Named as Defendants are Edward Davis, Chief of Police for the City of Los Angeles, Roger Arnebergh, City Attorney for the City of Los Angeles, and D. Kempton, a member of the Los An-

1. Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970), vacated 401 U.S. 990, 91 S.Ct. 1223, 28 L.Ed.2d 528 (1971); Espinosa v. Davis, No. 71–1261 (9th Cir., filed Feb. 23, 1971); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass. 1969), vacated 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex. 1969); Cambist Films, Inc. v. State of Illinois, 292 F.Supp. 185 (N.D.Ill.1968); Poulos v. Rucker, 288 F.Supp. 305 (M.D. Ala.1968).

2. Miller v. Reddin, 293 F.Supp. 216 (C.D. Cal.1968), remanded for dismissal, pursuant to voluntary dismissal filed by plaintiff before District Court could file its written Decision and Order, 422 F.2d 1264 (9th Cir. 1970); Schackman v. Arnebergh, 258 F.Supp. 983 (C.D.Cal.1966), appeal dismissed, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967); Pinkus v. Arnebergh, 258 F.Supp. 996 (C.D.Cal. 1966).

3. Plaintiffs' attorney was asked at the hearing on the Application for the Temporary Restraining Order what facts they would offer to prove regarding bad-faith prosecution, harassment and injury to Plaintiffs. He responded that the limited factual allegations contained in the Complaint were all Plaintiffs could prove.

geles Police Department, Badge No. 12881.

The Complaint further alleges that on two occasions, October 22 and October 27, 1970, Defendant Kempton entered, without a search warrant, the Vagabond Theater which was then showing the film "The Sensual Woman." Kempton, while viewing the film, allegedly took still photographs of certain scenes from "The Sensual Woman." Plaintiff Ruddick was on duty as cashier at the Vagabond Theater on October 22, 1970; and Plaintiff Veen was on duty as assistant manager on October 27, 1970.

Thereafter, Plaintiffs were charged in separate complaints with violations of California Penal Code section 311.2.[4]

Plaintiffs seek the above described injunctive and declaratory relief on the following grounds:

(1) The taking of still photographs of the film "The Sensual Woman" without either a prior adversary hearing or a search warrant amounted to an illegal search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution and the evidence so seized should be ordered suppressed by this Court.

(2) The film "The Sensual Woman" is not obscene and, therefore, a three-judge court should be convened to enjoin further prosecution of Plaintiffs for exhibiting this film. 28 U.S.C. § 2281 et seq.

(3) A three-judge Court should be convened to declare unconstitutional California Penal Code Section 1523–42, which authorized the search and seizure in this case, as unconstitutional on their face and as applied in this case in that they authorize the imposition of unlawful prior restraints on freedom of speech.

(4) A three-judge court should be convened to declare unconstitutional California Penal Code Sections 311 and 311.2 on the ground that they are overbroad on their face and as applied in this case where they are being used to prosecute those who exhibit obscene materials even where there is no question of commercial pandering, intrusion upon the rights of others, or receipt by juveniles.

THE LAW

Many Federal courts have been granting rather freely the relief sought by plaintiffs here, citing and relying upon Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).[5]

■ However, it now appears that these Courts have been reading too much into *Dombrowski*.[6] The Supreme court has just recently shed great light on the

---

4. California Penal Code Section 311.2
"(a) Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state possesses, prepares, publishes, or prints, with intent to distribute or to exhibit to others, or who offers to distribute, distributes, or exhibits to others, any obscene matter is guilty of a misdemeanor.

(b) The provisions of this section with respect to the exhibition of, or the possession with intent to exhibit, any obscene matter shall not apply to a motion picture operator or projectionist who is employed by a person licensed by any city or county and who is acting within the scope of his employment, provided that such operator or projectionist has no financial interest in the place wherein he is so employed."

5. See Footnote 1, *supra.*

6. Even a panel of our Ninth Circuit (Merrill and Ely, JJ.; Carter, J., dissenting) has precipitously and almost perfunctorily participated in the ill-conceived and unseemly Federal blockade of legitimate and good-faith State prosecutions of obscenity, Demich v. Ferdon. 426 F.2d 643 (9th Cir. 1970), only now to be stymied by the Supreme Court and ordered to reconsider the intrusive interference. Ferdon v. Demich, Inc., 401 U.S. 990, 91 S.Ct. 1223, 28 L.Ed.2d 528 (1971), vacating the Ninth Circuit's Order suppressing and returning State-seized obscene films and remanding the proceedings for reconsideration in the light of Perez v. Ledesma, *infra*, wherein the Supreme Court definitively holds that such suppression of evidence by a Federal court is not constitutionally warranted merely because the State procedures do not require a "prior adversary hearing" before such seizure of the obscene films.

fundamental tenets underlying our Federal system which turn upon the question of Federal intervention in State judicial proceedings. In a group of cases decided on February 23, 1971, the Supreme Court has at last outlined the proper policy that the Federal courts should follow when asked to intervene by way of injunction or declaratory judgment in a criminal prosecution which is contemporaneously pending in a State court. These illuminating cases are Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).[7]

They set forth that, as a matter of Federal policy, the Federal courts "must not, save in exceptional and extremely limited circumstances, intervene by way of either injunction or declaration in an existing state criminal prosecution." Younger v. Harris, 401 U.S. 37, 56, 91 S.Ct. 746, 756, 757, 27 L.Ed.

2d 669 (1971) (STEWART, J., concurring). As a matter of fact the cases hold that, except in the rare case, we must not even consider the merits. Therefore, there can be no need for the convening of a three-judge court and this Court must peremptorily dismiss without a hearing on the merits if the allegations in the Complaint and the supporting Affidavits are insufficient to show the "exceptional circumstances" hereinafter set forth. Samuels v. Mackell, *supra*.

In *Younger* the Supreme Court reversed the judgment of a three-judge court which had declared California's Criminal Syndicalism Act void for vagueness and overbreadth and restrained the District Attorney from further prosecution of the currently pending State court criminal action against the Plaintiff for alleged violation of the Act. The Court said, following Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed.2d 927 (1926) and Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), that this type of interference with State court criminal procedures is not justified except when there is a danger of great, immediate and irreparable injury to the defendant

7. These decisions involved State prosecutions for criminal syndicalism in California, *Younger*; criminal anarchy in New York, *Samuels*; mob action, resisting arrest, aggravated assault, aggravated battery and intimidation in Illinois, *Boyle*; and obscenity in Louisiana, *Perez*; in Texas, *Dyson*, and in Massachusetts, *Byrne*.

Moreover, as another panel of our Ninth Circuit (Hamley, Wright and Trask, JJ.), Judge Trask writing on April 16, 1970, has said and as has been perhaps more authoritatively and more recently emphasized by the Supreme Court, speaking on February 11, 1971, through Justice Black, we Federal courts, save in the most unusual and horrendous of State law enforcement or judicial harassment, have more than enough to keep us busy without butting into the States' regulations and prosecutions in the trivialities of school board and collegiate haircut and dress codes, as well as the more important fields of criminal syndicalism, criminal anarchy, mob action and obscenity. King v. Sad-

dleback Junior College District, 425 F.2d 426 (9th Cir. 1970); Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (Black, Circuit Justice, 1971).

The Supreme Court has obviously called a halt to the faddish trend of irritating interventions in State action that for a while threatened to become an avalanche of constitutional fetishism. Just as obviously, the new wave is here, and Federal courts must now refrain from all such abrasive abortions of legitimate state proceedings, unless a clear and harassing violation of constitutional rights is overwhelmingly unconscionable as well as readily discernible in a strict reading of the United States Constitution and its Amendments, such as a brutal denial of due process arising out of a summary punishment administered without notice and opportunity to be heard, or a debasing discrimination and invidious failure to guarantee equal protection under the laws, based solely on race, sex or religion, crying out for Federal intervention as a last and only resort.

if the state prosecution were allowed to proceed. Thus *Dombrowski* was not reversed but rather, it was limited to its facts. The Plaintiffs in *Dombrowski* offered to prove by affidavits that there had been illegal searches and seizures, continuing harassment and threats of prosecution even after a state court had quashed the warrants and suppressed the evidence initially seized. The allegations in the Complaint, together with the affidavits, clearly showed a type of aggravated harassment amounting to bad faith prosecution which should not be countenanced by the Federal courts.

The Supreme Court in this latest set of cases on February 23, 1971, has given us some guidelines to aid us in determining what constitutes great, immediate and irreparable injury that is required before we should intervene.

> "Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Id.*, 401 U.S. at 46, 91 S.Ct. at 751.

In other words, to be an injury of this nature it must be "above and beyond that associated with the defense of a single prosecution brought in good faith, that had always been considered sufficient to justify federal intervention." Id., 401 U.S. at 37, 48, 91 S.Ct. at 751.

The Court in *Younger* and again in Samuels v. Mackell, *supra*, held regarding declaratory relief,

> "that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an in-

junction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." Samuels v. Mackell, *supra*, 401 U.S., at 73, 91 S.Ct., at 768.

Further, it is clear that

> "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger v. Harris, *supra*, 401 U.S., at 54, 91 S.Ct., at 755.

## APPLICATION OF LAW TO THIS CASE

■ Although the Complaint does allege "great, immediate and irreparable injury and loss to Plaintiffs," this is merely conclusory for, under the facts as alleged and the offer of proof at the hearing on the Temporary Restraining Order, it is clear that Plaintiffs have not carried their burden of showing they have suffered any injury other than each being required to defend single state court prosecutions. None of the alleged facts would even lead this Court to infer that these are anything other than state criminal prosecutions brought in the good-faith hope of obtaining valid convictions. The allegations are most certainly deficient in stating facts upon which we could infer any plan of harassment.

Since we so find, under the teachings of these Supreme Court cases, it is clear that Plaintiffs are not entitled to injunctions restraining this and prohibiting future state court prosecutions of Plaintiffs. Similarly, since Plaintiffs are not entitled to this injunctive relief, we should not consider the merits of their request for declaratory relief regarding the California statutes herein challenged.

In light of this discussion and the conclusion we draw therefrom that Plaintiffs are not entitled to a hearing on the merits, it becomes apparent that there is

no need to convene a three-judge court. 28 U.S.C. § 2281 et seq. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

There is one further matter which these recent Supreme Court cases consider that is dispositive of the remaining relief sought by Plaintiffs in this case. Plaintiffs pray for an order suppressing certain evidence "seized" by Defendants, to wit, still photographs taken by Defendant Kempton of certain scenes from the film "The Sensual Woman". Plaintiffs raise this issue even though it is clear from the Complaint that the film itself "The Sensual Woman" has not in fact been seized. Regardless of the merits of this contention, Perez v. Ledesma, *supra*, requires us to refuse to grant this "disruptive interference with the operation of the state criminal process." The Supreme Court again pounds its point home:

"Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." 401 U.S. at 85, 91 S.Ct. at 677.

CONCLUSION

There are no facts alleged in the Complaint which would even suggest that there are any exceptional circumstances which would give a warrant to this Court to intrude itself into these State criminal prosecutions. There have been neither repeated arrests nor seizures of films. Plaintiffs have in no way been put out of business. And they will have ample opportunity to defend their constitutional rights in the State court proceedings.

The foregoing shall constitute the findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P.