Brent STEIN, Plaintiff,

v.

Charles BATCHELOR, Chief of Police, City of Dallas; T. C. Snider, V. D. Monaghan, R. D. Rodgers, and Henry Wade, District Attorney, Dallas County, Defendants.

Civ. A. No. 3–2951.

United States District Court
N. D. Texas,
Dallas Division.

June 9, 1969.

David R. Richards, Austin, Tex., for plaintiff.

Mel S. Friedman, Houston, Tex., amicus curiae.

James M. Williamson, Dallas, Tex., Alex Bickley, City Atty., by Thomas B. Thorpe, Dallas, Tex., Lonny F. Zwiener, Austin, Tex., for defendants.

Before GOLDBERG, Circuit Judge, and HUGHES and WOODWARD, District Judges.

HUGHES, District Judge:

This case involves the constitutionality of Article 527 of the Texas Penal Code, entitled "Acts involving obscene articles, objects, and materials; fines and penalties; exemptions." [1] It is a civil rights

1. Section 1. Whoever shall knowingly photograph, act in, pose for, model for, print, sell, offer for sale, give away, exhibit, televise, publish, or offer to publish, or have in his possession or under his control, or otherwise distribute, make, display, or exhibit any obscene book, magazine, story, pamphlet, paper, writing, card, advertisement, circular, print, pictures, photograph, motion picture film, image, cast, slide, figure, instrument, statue, drawing, phonograph record, mechanical recording, or presentation, or other article which is obscene, shall be fined not more than One Thousand Dollars ($1,000) nor imprisoned more than one (1) year in the county jail or both.

Section 2. Whoever shall knowingly offer for sale, sell, give away, exhibit, televise, or otherwise distribute, make, display, or exhibit any obscene book, magazine, story, pamphlet, paper, writing, card, advertisement, circular, print, pictures, photograph, motion picture film, image, cast, slide, figure, instrument, statue, drawing, phonograph record, mechanical recording, or presentation, or other article which is obscene, to a minor shall be fined not more than Two Thousand, Five Hundred Dollars ($2,500) nor imprisoned in the county jail more than two (2) years or both.

Section 3. For purposes of this article the word "obscene" is defined as whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests. Pro-

vided, further, for the purpose of this article, the term "contemporary community standards" shall in no case involve a territory or geographic area less than the State of Texas.

Section 4. Whoever shall be convicted for the second time of a violation of this article shall be deemed guilty of a felony and shall be punished by confinement in the State penitentiary for not more than five (5) years or by a fine of not more than Ten Thousand Dollars ($10,000) or by both such fine and imprisonment.

Sec. 5. It shall be a defense to any charges brought hereunder if such prohibited matter or act shall be regularly in use in any bona fide, religious, educational or scientific institution or the subject of a bona fide scientific investigation.

The provisions of this Act shall not apply to any motion pictures produced or manufactured as commercial motion pictures which (1) have the seal under the Production Code of the Motion Picture Association of America, Inc.; or (2) legally move in interstate commerce under Federal Law; or (3) are legally imported from foreign countries into the United States and have been passed by a Customs Office of the United States Government at any port of entry.

The provisions of this Act shall not apply to any daily or weekly newspaper.

Sec. 6. The district courts of this State and the judges thereof shall have full power, authority, and jurisdiction, upon application by any district or county attorney within their respective juris-

case brought under authority of 42 U.S. C. sections 1983 and 1985 by Brent Stein, individually and on behalf of the class similarly situated.

Plaintiff Stein is the publisher of an underground, bi-weekly newspaper, known as the "Dallas Notes". The class which he represents is composed of present and future employees of and contributors to the "Dallas Notes" and persons engaged in the distribution of the "Dallas Notes". The defendants, all of whom are sued in their official capacities, are Henry Wade, District Attorney of Dallas County, Charles Batchelor, Chief of Police, City of Dallas, and three members of the Dallas Police Department.

Plaintiff alleges that the Defendant police have engaged in a deliberate course of treatment designed to harass Plaintiff for the purpose of suppressing the dissemination of the "Dallas Notes" and the political views expressed therein. They allege further that as a result of two searches of Stein's residence by the police (a portion of the first floor of his residence is used as a work area) there are presently pending against him two misdemeanor cases in the County Criminal Courts of Dallas County, charging him with possession of obscene "paper" and "pictures" in violation of Article 527 of the Texas Penal Code. Plaintiff alleges that he wishes to continue publication of the "Dallas Notes" and fears future arrests and prosecutions under Article 527 unless the rights of the parties thereunder are declared by this Court.

Plaintiff prays (1) for an injunction against Defendants enjoining them from arresting, presenting for indictment, or prosecuting Plaintiff (with the exception of presently pending causes) under Article 527 of the Penal Code of the State of Texas and (2) for a declaratory judgment declaring Article 527 to be unconstitutional on its face and as applied to Plaintiff. Plaintiff also prays (3) for an injunction against Dallas Police enjoining any arrest of Plaintiff or seizure of his property on the grounds of obscenity without a prior determination of the obscene character of the material in question and requiring the issuance of various instructions to the Police Department.

■ We find that the prayers for an injunction against any arrest or seizure and for the issuance of instructions are based on the alleged harassment and are not an attack upon the constitutionality of a statute. It is therefore not a subject for a three-judge court.

Therefore, after disposing of the motion for summary judgment this Court will decline to exercise any pendent jurisdiction, which it may have over the remaining claims, and will remand the remainder of the case for determination by a single District Judge.

Plaintiff, pursuant to Rule 56 of the Federal Rules of Civil Procedure, has filed a motion for partial Summary Judgment praying that Article 527 · be declared unconstitutional.

All Defendants have filed Motions to Dismiss, relying primarily upon (1) the federal anti-injunction statute 28 U.S.C. section 2283(2) the abstention doctrine and (3) the failure to raise a substantial constitutional question.

Plaintiff contends Article 527 is unconstitutional for the following reasons: (1) that it makes mere possession of obscene material a crime; (2) that it is an overbroad regulation of expression since the definition of obscenity does not require that the material be utterly without redeeming social value; and (3) that it offends the equal protection clause of the fourteenth amendment because Section 5 exempts daily and weekly but not bi-weekly newspapers from the operation of the statute.

An Amicus Curiae filed a brief with the permission of the Court, and, in addition to the contentions of plaintiff, Amicus Curiae contends that the statute improperly limits the geographical area

dictions, to issue any and all proper restraining orders, temporary and permanent injunctions, and any other writs

and processes appropriate to carry out and enforce the provisions of this Act.

within which contemporary community standards are to be measured and applied and fails to provide certain procedural safeguards.

■ Considering first Defendants' contentions in their motion to dismiss, we find them without merit. The claim that 28 U.S.C. § 2283 [2] bars injunctive relief is answered in Dombrowski v. Phister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The Supreme Court in that case held the statute did not apply to prosecutions that arise after the filing of the complaint in the district court. The Court declared:

> "This statute [2283] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted. * * * Since the grand jury was not convened and indictments were not obtained until after the filing of the complaint, which sought interlocutory as well as permanent relief, no state 'proceedings' were pending within the intendment of 2283". *Id.* at 484 n. 2, 85 S.Ct. at 1119.

*See also* Cameron v. Johnson, S.D.Miss. 1966, 262 F.Supp. 873 and Landry v. Daly, N.D.Ill.1968, 288 F.Supp. 200, 221–224. In the case before us Plaintiff is seeking to enjoin only future prosecutions and the anti-injunction statute does not apply.

The second contention of Defendants that this Court should abstain until the State Courts have had an opportunity to pass on the constitutionality of the statute was likewise considered in Dombrowski v. Phister, *supra*. There Louisiana's Subversive Activities and Communist Control Law was attacked as being unconstitutional. A three-judge court dismissed, holding that the abstention doctrine applied. The Supreme Court reversed, declaring:

> "We hold the abstention doctrine is inappropriate for cases such as the

present one where * * * statutes are justifiably attacked on their face as abridging free expression". P. 489, 85 S.Ct. p. 1122.

■ We believe that the case before us is similar to *Dombrowski* in its attack on the Texas obscenity statute and that we should not obstain.

As to whether a substantial constitutional question is raised, it was held in Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) "[t]he existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint."

With reference to the allegation in the case before us we cite the case of Phelper v. Decker, 5th Cir. 1968, 401 F.2d 232. Petitioner in that case had been convicted of possessing obscene material in violation of Article 527 of the Texas Penal Code. The Circuit Court, while refusing to consider the constitutionality of the Statute because of the failure of petitioner to exhaust state remedies, declared with reference to its constitutionality at page 240

> "Since the Texas Statute is devoid of any language that requires a finding that the material must have no redeeming social value, it may be constitutionally suspect."

■ In the case before us the constitutionality of the statute is attacked on various grounds which we believe satisfy the requirements of substantiality.

■ Before discussing the merits of this controversy, we wish to re-emphasize that consideration of the motion for summary judgment does not in any way involve an appraisal of the constitutionality of the application of Article 527 to Plaintiff. Our sole concern is the determination of whether the statute is constitutionally defective on its face.

Section 1 of Article 527 provides:

> "Whoever shall knowingly photograph, act in, pose for, model for, print, sell,

---

2. 28 U.S.C. § 2283 provides as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly author-

ized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

offer for sale, give away, exhibit, televise, publish, or offer to publish, or have in his possession or under his control, or otherwise distribute, make, display, or exhibit any obscene book, magazine, * * * or other article which is obscene * * *."

In view of Stanley v. Georgia, 89 S.Ct. 1243, the above section is clearly unconstitutional in so far as it makes mere possession of obscene material a crime. A difficult question remains, however, concerning the extent to which Section 1 is affected by *Stanley*. The State points out that the session law of which Article 527 is the codification (Chapter 461, Acts 57 Leg.R.S.1961, Ch. 461, p. 1041), contains a severability clause. The State argues that only the portion reading "have in his possession or under his control" is affected by the *Stanley* decision. We do not agree.

Although the narrow holding of *Stanley* is simply that "the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime", we think that the case also stands for a broader proposition. Since *Stanley* involved a direct review of a state conviction for possession of obscene matter, the narrow holding was sufficient to reverse the conviction; thus it was not necessary for the Court to base its decision on a broader ground. It is impossible, however, for this Court to ignore the broader implications of the opinion which appears to reject or significantly modify the proposition stated in Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) that "obscenity is not within the area of constitutionally protected speech or press".

In *Roth* the Supreme Court declared that obscenity is not protected by the First Amendment, whereas non-obscene expression is fully protected, unless excludable because encroachment upon the limited area of more important interests. The exclusion of obscenity from First Amendment protection was justified on the theory that obscenity is devoid of ideas having even the slightest redeeming social value. The following passages from the *Stanley* opinion appear to modify the dichotomy between protected and unprotected expression by recognizing that at least in some contexts obscenity is afforded First Amendment protection and thus cannot constitutionally be regulated in the absence of a legitimate countervailing societal interest:

"*Roth* and its progeny certainly do mean that the First and Fourteenth Amendments recognize a valid governmental interest in dealing with the problem of obscenity. But the assertion of that interest cannot, in every context, be insulated from all constitutional protections."

\* \* \* \* \* \*

"It is now well established that the Constitution protects the right to receive information and ideas. * * * This right to receive information and ideas regardless of their social worth * * * is fundamental to our free society. Moreover, in the context of this case—a prosecution for mere possession of printed or filmed matter in the privacy of a person's own home —that right takes on an added dimension. For also fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusion into one's privacy."

*Stanley* expressly holds that obscenity is protected in the context of mere private possession and in our opinion further suggests that obscenity is deprived of this protection only in the context of "public actions taken or intended to be taken with respect to obscene matter".[3]

Of course, the First Amendment does not confer absolute immunity from regulation. The State may regulate even non-obscene expression if there is a legitimate state interest. However, *Stanley* also indicates that in the context of "pri-

---

3. Indeed, *Stanley* may reasonably be read as supporting the proposition that obscenity is fully protected by the First Amendment, but that the State has a legitimate interest in regulating the public dissemination of ideas inimical to the public morality.

vate" expression there is unlikely to be any legitimate state interest justifying regulation (with the possible exception of the State's interest in protecting children).

Applying the above discussion of the scope of the *Stanley* decision to the present case, we conclude that Section 1 as a whole is overbroad in that it fails to confine its application to a context of public or commercial dissemination. In addition to proscribing the mere possession of obscene material, Section 1 states that "whosoever shall knowingly photograph, act in, pose for * * * print" etc. without any limitation that such activities be engaged in publicly or with the intent to publicly or commercially distribute the materials involved. Although a number of the phrases in their normal and natural usage connote a public activity, this Court is disinclined to separately analyze each phrase appearing in Section 1 to determine if it is constitutionally viable. In our opinion the various provisions of Section 1 are too numerous and interrelated for such an approach to be meaningful. We therefore hold that the whole of Section 1 is unconstitutional for failure to confine its application to a context of public or commercial dissemination.

Next we consider Plaintiff's contention that the absence of any language in the definition of "obscene" requiring that the material be "utterly without redeeming social value" renders Article 527 an impermissibly vague and overbroad regulation of expression.

Article 527 defines "obscene" as "whether to the average person applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests."

This is the definition of obscenity contained in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304 (1957). While the Court in *Roth* did not include in its definition, per se, that material to be obscene must be "utterly without redeeming social value" it quoted the following from Chaplinsky v. New Hampshire, 315 U.S. 568, 571–572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942):

" * * * There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene * * *. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. * * * "

In Jacobellis v. Ohio, 378 U.S. 184, at 191, 84 S.Ct. 1676, at 1680, 12 L.Ed.2d 793 (1963), the Supreme Court declared that while the test in *Roth*

"is not perfect, we think any substitute would raise equally difficult problems, and we therefore adhere to that standard".

The Court, however, went on to say:

"We would reiterate, however, our recognition in *Roth* that obscenity is excluded from the constitutional protection only because it is 'utterly without redeeming social importance' * * * ". *Id.*

While in both *Roth* and *Jacobellis* there is a recognition by the Court that material to be obscene, must be "utterly without redeeming social value" these words are not included in the definition.

In a Book Named "John Cleland's Memoirs of a Woman of Pleasure v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1965), however, the Supreme Court went further when it declared at page 418 that in order for material to be obscene:

"Under this (*Roth*) definition as elaborated in subsequent cases, three elements must coalesce; it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The Fifth Circuit has not passed directly on the question before us but in the case of Phelper v. Decker the Court made this comment at page 240 on the statute before us:

"Since the Texas Statute is devoid of any language that requires a finding that the material must have no redeeming social value, it may be constitutionally suspect."

The definition of "obscene" in Article 527 does not appear to have been construed by the Texas Courts. In this circumstance we must place our own construction on the statute.

■ It is clear to us that the Supreme Court in *Memoirs* has added to the definition per se, of "obscene" in the *Roth* case by including in it the provision that to be "obscene" material must be "utterly without redeeming social value." Thus without such inclusion the Texas statute is unconstitutional.

■ As to the Plaintiff's contention concerning contemporary community standard, we assume *arguendo* that national standards are constitutionally required. See Jacobellis v. Ohio, *supra*, 378 U.S. at 192–195, 84 S.Ct. 1676. This portion of Article 527 apparently has not been construed by the Texas courts. In our opinion Article 527 may reasonably be construed as merely rejecting "local" (i. e. less than state-wide) community standards, and thus is not constitutionally deficient.

■ Amicus Curiae contends that Article 527 is unconstitutional because it lacks any provision for an adversary hearing on the question of obscenity prior to seizure, citing *inter alia* Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), Quantity of Books v. Kansas, 378 U.S. 205 (1964), and Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

We conclude, however, that the absence of such a provision does not invalidate the statute. None of the cases cited support this proposition. In most of the cases cited the Supreme Court reversed a conviction because the *procedures* involved were inadequate. And in Freedman v. Maryland the statute declared unconstitutional was not a penal statute such as Article 527, but a civil statute which required that all films be submitted to a Board of Censors before being shown to the public.

As the State points out there is at least one procedure whereby Article 527 as written may be constitutionally enforced; police officers can purchase material, and prosecutions can be instituted on the basis of the purchased articles.

■ If, in fact, constitutionally suspect procedures are followed in enforcing Article 527, then the constitutionality of such procedures can be collaterally attacked in federal court without the necessity of exhausting state remedies. The Dombrowski rationale, if not the precise holding itself, would apply to this situation since First Amendment rights may be irretrievably lost by a seizure of constitutionally protected publications. *See e. g.* Poulos v. Rucker, M.D.Ala.1968, 288 F.Supp. 305.

We will not pass upon Plaintiff's contention that the exemption of daily and weekly but not bi-weekly newspapers from the operation of Article 527 offends the equal protection clause of the Fourteeenth Amendment. Since this ground of attack does not involve an allegation that the statute on its face is repugnant to the First Amendment, *Dombrowski* does not compel us to dispense with abstention and the limitation upon the exercise of federal equity jurisdiction.

In conclusion, Section 1 of Article 527 is impermissibly and unconstitutionally broad. The definition of "obscene" in Section 3 should include a requirement that the material be "utterly without redeeming social value". Plaintiff is entitled to a declaratory judgment to this effect and to injunctive relief against the future enforcement of Sections 1 and 2.

Judgment will be entered in accordance with the declarations and conclusions reached herein.