The STATE of Texas, Petitioner,

v.

Steve SCOTT et al., Respondents.

No. B–2006.

Supreme Court of Texas.

Nov. 11, 1970.

Rehearing Denied Dec. 16, 1970.

**104**

Timothy D. Eyssen, Wichita Falls,
Crawford R. Martin, Atty. Gen., Lonny
Zwiener, Asst. Atty. Gen., Austin, for appellant.

Maley & Friedman, Mel S. Friedman,
Houston, for appellees.

CALVERT, Chief Justice.

The record in this case presents such a strange melange of unauthorized and inconsistent pleadings and orders that it has been difficult to determine what issues were properly before the trial court for decision and are now properly before this court for review.

This case was begun on January 20, 1970, as a simple action by the State of Texas for injunctive relief against the Cinne Arts Theatre, Inc. and its manager, Steve Scott. The suit grew out of the showing by the defendants of seven movies alleged to be obscene, and was filed pursuant to authority contained in Section 13, Article 527, Penal Code of Texas. The relief sought was (1) a temporary restraining order directing that the pictures not be altered in any way or be removed from the county, but be presented to the judge for viewing; (2) a temporary injunction and (3) a permanent injunction against exhibiting obscene matter or possessing such matter for exhibition. The court entered an order setting a hearing on the petition for a temporary injunction for January 22 at 9 a. m. and directing that the motion pictures not be altered or removed from the county and be produced for viewing by the judge. In addition, a subpoena duces tecum was issued for Scott directing him to appear at 9 a. m. on the 22nd and to bring the motion picture films with him together with a projector suitable for showing them.

Counsel for defendants filed a series of pleadings denominated "motions," far too numerous to describe or even to catalogue, many of which are unauthorized by our rules of civil procedure and are unknown to our procedural law. One of the pleadings became the basis for the trial court's judgment. It should be analyzed.

The pleading is denominated "MOTION TO DISMISS THIS LAWSUIT AND MOTION TO DECLARE THE TEXAS OBSCENITY STATUTE, ARTICLE 527, UNCONSTITUTIONAL AND VOID." In this so-called "motion," defendants

asked the court to (1) dismiss the State's suit, (2) declare the Texas obscenity law unconstitutional, and (3) "* * * in the alternative, if this Court should not declare said Statute unconstitutional, that this Court stay any further proceeding and issue no further order and that this entire record be finalized and certified to the Texas Supreme Court for the purpose of deciding the constitutional questions presented in this motion and for declaring the said Texas obscenity law unconstitutional * * *." The reasons given in the motion for declaring the statute unconstitutional are substantially the same as those hereafter shown to have been adopted by the trial judge.

Although the trial court's judgment recites that on February 9 a hearing was held on the State's application for temporary injunction and on defendants' motion to dismiss and to declare Article 527 of the Penal Code unconstitutional, the record before us indicates that the court simply sustained the defendants' motion without hearing evidence on the State's application. In its judgment, the court (1) denied the State's application for a temporary injunction; (2) denied the State's application for a permanent injunction; (3) dismissed the State's suit with prejudice; and (4) permanently enjoined the State and its law enforcement agencies in Wichita County and all of its subdivisions from enforcing Article 527. In addition, the court in its judgment *declared* [1] Sections 1(E), 1(F), 3, 9 and 13 of Article 527 to be unconstitutional and void. The sections thus declared to be unconstitutional and void read:

"Section 1. As used in this Article:

"* * *

"(E) 'Distribute' means to transfer possession of, whether with or without consideration.

"(F) 'Knowingly' means having actual or constructive knowledge of the subject matter. A person shall be deemed to have constructive knowledge of the contents if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material.

"* * *

"Sec. 3. Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares for distribution, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor.

"* * *

"Sec. 9. Where possible and practical, obscene matter upon which prosecutions are based under the provisions of this article, should be obtained by peace officers or prosecuting attorneys without resorting to seizure of such matter pursuant to a search warrant. Where seizure of alleged obscene matter is necessary and practical, a search warrant to search for and seize such matter is expressly authorized. Moreover, no peace officer shall seize any obscene matter from the possession of any person except under the authority of a search warrant issued under the provisions of the Code of Criminal Procedure of Texas. Where practical, the matter alleged to be obscene shall be attached to the complaint to afford the issuing magistrate the opportunity to examine such materials to assist him in deciding whether the warrant shall issue. Where the alleged obscene matter is not available to present to the magistrate, the affiant or affiants to the complaint shall describe the alleged obscene materials in detail so as to assist the magistrate in deciding whether the warrant should issue. Moreover, where alleged obscene matter is not attached to the complaint, as in the case of

---

1. Emphasis ours throughout.

motion pictures or statutes, the magistrate to whom the complaint is presented shall, where practical, personally view the matter alleged to be obscene before issuing the warrant. Where a search warrant is issued under the provisions of this section, only that matter described in the complaint shall be seized by the executing peace officer or officers. Nothing contained in this section shall prevent the obtaining of alleged obscene matter under injunction proceedings as authorized by this Act or by any other statute of the State of Texas.

" * * *

"Sec. 13. The district courts of this state and the judges thereof shall have full power, authority, and jurisdiction, upon application by any district or county attorney within their respective jurisdictions, or the attorney general to issue any and all proper restraining orders, temporary and permanent injunctions, and any other writs and processes appropriate to carry out and enforce the provisions of this article. Such restraining orders or injunctions may issue to prevent any person from violating any of the provisions of this article. However, no restraining order or injunction shall issue except upon notice to the person sought to be enjoined. Such person shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial. In the event that a final order or judgment of injunction be entered against the person sought to be enjoined, such final order or judgment shall contain a provision directing the person to surrender to the sheriff of the county in which the action was brought any obscene matter in his possession and such sheriff shall be directed to seize and destroy such matter."

The court also filed Findings of Facts and Conclusions of Law in which Sections 1(E), 1(F), 3, 9 and 13 were *adjudged and*

*declared* to be unconstitutional and void. Section 1(E) was declared to be unconstitutional because it is "overbroad in that in its definition of '*distribute*' it also fails to differentiate between public and mere private *distribution* * * *." Section 1(F) was declared to be "unconstitutionally vague and overbroad in setting forth the constitutionally required scienter element of knowledge *by constructively imposing knowledge* through a use of vague and indefinite terms so as to amount to absolute and strict liability. * * *" Section 3 was declared to be unconstitutional because "it is over broad, and fails to differentiate between public and mere private *distribution*, and fails further to differentiate between public and mere private possession of alleged obscene materials. * * *" Section 9 was declared to be "unconstitutional in that it specifically sets forth *an ex parte search warrant provision* * * * [without] requiring a prior-adversary-determination of the obscene nature of the press materials involved, before any search, seizure, arrest or any other criminal process can be instituted against press materials." Section 13 was declared unconstitutional "in that it fails to define proper safeguards to protect freedoms of speech and press * * * [in that] it fails to set forth * * * (a) the procedural guidelines for issuing temporary and permanent injunctions; (b) it fails to set forth proper guidelines as to the date and time of defendants' answer, the type of evidence to be used and produced at such a hearing, and more specifically it fails to set forth the burden of proof before an injunction should issue restraining freedom of the press * * * [and] it fails to provide for adequate notice to a defendant to be able to answer and defend allegations raised in a petition for injunction, in that it sets forth a trial setting which could be within one day after joinder of issue * * *."

In this direct appeal, prosecuted pursuant to Rule 499a Texas Rules of Civil Procedure, the State by proper points of error

challenges the various phases of the trial court's judgment as well as its several declarations of unconstitutionality. We sustain all of the points, albeit for reasons differing generally from those given by the State, and reverse the trial court's judgment.

■ Unless defendants' "motion" is considered to be a cross-action for declaratory judgment as authorized by Article 2524–1, Vernon's Tex.Civ.Stats.—and no one has suggested it may be—, there is no provision in our statutes or rules of civil procedure authorizing the type of pleading filed by defendants and made the basis of the trial court's judgment. Under our rules of procedure unconstitutionality of a statute upon which a suit is based is as to the defendant a defensive and not an offensive weapon to be used in a motion to dismiss. Rule 12(b) of the Federal Rules of Civil Procedure provides that a defendant may by motion present a defense based on "failure to state a claim upon which relief can be granted." In spite of the fact that the Federal rules were in existence when the Texas rules were adopted and many of such rules were adopted verbatim, Rule 12(b) has no counterpart in the Texas Rules of Civil Procedure.

Rule 45, Texas Rules of Civil Procedure, requires that pleadings in the district and county courts "[b]e by petition and answer" and that the answer consist of a statement in plain and concise language of "the defendant's grounds of defense." Rules 83–98 authorize pleading of every conceivable defense in an answer, including unconstitutionality of a statute on which suit may be based. Moreover, permitting the question of unconstitutionality to be raised at the temporary injunction hearing by mere motion short-circuits the right of a plaintiff to have a separate hearing on the right to a permanent injunction. See Houston Belt & T. Ry. Co. v. Texas & New Orleans R. Co., 155 Tex. 407, 289 S.W.2d 217 (1956). No reason is disclosed in the record for abandoning orderly rules of procedure. Nevertheless, the trial court treated the motion as an answer to the State's petition, at least to the extent of denying the State's prayer for a temporary injunction, and we will also do so.

■ The trial court's holding that Sections 1(E) and 1(F) of Article 527 are unconstitutional is clearly erroneous. These sections are mere definitions of words or terms used in the statute. They neither regulate conduct, prescribe duties, define offenses nor impose penalties. We know of no provision in the constitution of this State or of the Constitution of the United States limiting the power of the State Legislature to define the words and terms "distribute" and "knowingly" as used in Article 527. Whether the definitions render other sections of the statute unconstitutional is another matter.

■ The fact that the provisions of Sections 3 and 9 may be subject to the deficiencies charged to them by defendants and found by the trial court is no reason for declaring those sections unconstitutional and void in toto or as to persons and situations to which the deficiencies are inapplicable. 16 Am.Jur.2d 427, Constitutional Law § 194; McKinney v. Blankenship, 154 Tex. 632, 282 S.W.2d 691 (1955); Ex parte Usener, 391 S.W.2d 735 (Tex. Cr.App.1965). Only a person charged with *distribution* of obscene materials *with constructive knowledge* of their obscene character may question the validity of Section 3 on the grounds set out in defendants' motion and incorporated in the trial court's findings and conclusions. See Oil Well Drilling Co. v. Associated Indemnity Corp., 153 Tex. 153, 264 S.W.2d 697, 699 (Tex. Sup.1954). The defendants in this case were not so charged. The State's suit charged only that "Steve Scott *exhibited* to the public for an admission fee in the Cinne Arts Theatre, a motion picture, to wit: 'What Ever Happened to Stud Flame' and six other films" which pictures were alleged to be obscene materials as defined in Article 527. The injunction sought was to prohibit defendants from "*exhibiting* or

*having in his/their possession with intent to exhibit* any obscene matter." The record does not disclose that the defendants had only *constructive knowledge* of the nature, content and character of the films they were showing.

■ Neither were defendants in position to question the validity of Section 9 on the ground that it authorizes issuance of a search warrant for seizure of materials without a prior adversary hearing. No search warrant or other writ for seizure of the films was issued in this case. If the subpoena duces tecum for production of the films was improperly issued, that fact does not invalidate Section 9 and does not authorize defendants to attack its validity on a ground not relevant to their case. To hold that Sections 3 and 9 would be unconstitutional and void if an effort were made to apply them in situations and as to persons differing from those in this case would be to give an advisory opinion which our courts are not at liberty to give. See United Services Life Ins. Co. v. Delaney, 396 S.W.2d 855 (Tex.Sup.1965); Morrow v. Corbin, 122 Tex. 553, 62 S.W. 2d 641 (1933).

■ The only remaining reason for the trial court's judgment denying the State's prayer for a temporary injunction is unconstitutionality of Section 13. As heretofore indicated that section was held unconstitutional because it fails to provide for adequate notice and proper procedural guidelines.

The leading case in this area is Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), which involved a criminal prosecution for violation of a state statute which made it unlawful to exhibit a motion picture without first obtaining a license. The Supreme Court held the statute unconstitutional because: (1) Upon the censor's refusal to grant a license an exhibitor had to assume the burden of instituting judicial proceedings and persuading a court that the film was protected expression; (2) once the censor had acted against a film, exhibition was prohibited pending judicial review and (3) no assurance of prompt judicial determination was afforded. The court further stated:

"The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." 380 U.S. 51 at 58, 85 S. Ct. 734 at 739.

The court in *Freedman* recommended the kind of injunctive procedure upheld in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), a type very similar to that provided by Section 13. This type of procedure was again recommended in A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 210, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1965). In Fontaine v. Dial, 303 F.Supp. 436 (W.D. Tex.1969), Section 13 was specifically suggested as a possible procedure for the State to utilize to enforce its public policy against the display of obscene movies. Clearly, the court in that case was of the opinion that Section 13 is constitutional. Section 13 was also considered and sustained as constitutional by the court in Newman v. Conover, 313 F.Supp. 623 (N. D.Tex.1970).

■ Under Section 13 no restraining order or injunction may be issued without notice to the persons to be enjoined. Trial on the issues may be had, if a defendant wishes, within one day after answer, and a decision must be reached by the court within two days after conclusion of the trial determining the issue of obscenity. Section 13, read in light of the other sections of Article 527, such as those defining obscenity, is not vague. The prevailing constitutional standards place the burden of proof in an adversary proceeding on the obscenity issue on the State, as does Article 527. As the three-judge court in United States v. 37 Photographs, 309 F.Supp. 36 (C.D.Cal.1970), stated:

"Any system of censorship must contain, at the minimum, the following procedural safeguards if it is not to contravene the First and Fifth Amendments, (1) any restraint prior to judicial determination can be imposed only briefly, and (2) the censor in a specified brief period will go to court. The safeguards must be contained in the statute or by judicial rule."

Thus read, we hold Section 13 of Article 527 constitutional.[2]

■ Finally, the State asserts that the trial court erred in enjoining the State of Texas, by and through all of its law enforcement agencies in Wichita County, from enforcing Article 527. This point raises questions as to whether all persons enjoined were proper parties to the lawsuit and whether an injunction could be granted in the absence of any pleading requesting one. We sustain the point.

■ The only suggestion by the defendants, which we have found in the record, that they were entitled to injunctive relief is contained in a pleading denominated "MOTION TO DISMISS BECAUSE OF THE GRANT OF IMMUNITY." In this pleading defendants pointed out that, on motion of the State, the district judge had granted them immunity from criminal prosecution, and they urged that "such immunity implies that Defendants are free from being abused by a 'quazi-criminal' [sic] proceeding sheltered under a disguised civil title named 'injunction.'" They prayed that "this cause" be permanently enjoined from bringing any criminal prosecution against them, "and further that the State of Texas be enjoined from bringing any type of 'quazi-criminal' [sic] or civil action to punish these defendants as it would infringe and

encroach upon Defendants' freedoms granted under Defendants' grant of immunity." A grant of immunity from criminal prosecution does not insulate a violator of Article 527 against injunctive relief.

The judgment of the trial court is reversed, the injunction against the State is dissolved, the State's suit is reinstated on the docket of the trial court and that court is directed to proceed to trial of such suit in accordance with this opinion.

McGEE, Justice (concurring).

While I agree with the holding of the majority of the Court that Sections 3 and 13 of Article 527 of the Texas Penal Code are constitutional as applied to the respondents here, I would, for at least two reasons, go further and answer the respondents' challenge to the statute on its face.

The first reason is that the respondents may well have standing to challenge the statute if they can demonstrate that it is overbroad on its face. The United States Supreme Court, in Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), held that one has standing to challenge a licensing statute which endangers freedom of expression regardless of whether or not that person's conduct could be prohibited by a properly drawn statute and regardless of whether or not that person had applied for a license. The Court said that even though the defendant was convicted of violating one particular section of the licensing act, he could still call into question the other sections of the act, all of which, taken together, tended to effect an invalid prior restraint. The Court went on to say:

"Standing is recognized in such cases because of the ' * * * danger of toler-

---

2. Since this case was tried in the trial court, a three-judge Federal court has considered the constitutionality of Sections 1(F), 3, 9 and 13 of Art. 527. See Newman v. Conover, 313 F.Supp. 623 (N.D.Tex.1970). The court held Sections 1(F), 3 and 13 constitutional, but held Section 9 unconstitutional. We agree with the holding that Sections 1(F) and 13 are constitutional. We reserve judgment as to constitutionality of Sections 3 and 9.

ating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'" 380 U.S. 56, 85 S.Ct. 738.

While I do not agree that such a broad standing rule is necessary for cases not concerned with a licensing program, I, for one, cannot say with any certainty that the Supreme Court or some other federal court, if presented with the occasion, will hold that one charged with *exhibiting* obscene motion pictures under Article 527 has no standing to question whether the term "distribute" used in the same statute has a constitutionally overbroad definition. The federal courts have shown themselves quick to act where alleged First Amendment freedoms are regulated by State statutes. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); and Maraist, Federal Injunctive Relief Against State Court Proceedings: The Significance of Dombrowski, 48 Tex.L.Rev. 535 (1970). They should, at the very least, have the benefit of the interpretation that this Court gives to statutes such as Article 527.

The second reason is that the Texas Constitution, the State statutes and our own Rules of Civil Procedure [1] contemplate that this Court should make some determination when important issues concerning the constitutionality of a statute of this State are before it. Both sides here ask this Court to rule on the constitutionality of Sections 1(E), 1(F), 3, 9 and 13 of Article 527. In the interest of speeding the pace of justice, this Court should do so. Accordingly, I have set forth below my opinion as to the constitutionality of Article 527.

I. *Constitutionality of Section 3 and Section 1(E)*

The State first contends that the trial court erred in denying injunctive relief to the State and in granting such relief to the defendants on the grounds that Section 3 and Section 1(E) of Article 527 are unconstitutionally overbroad because they fail to differentiate between public and mere private possession of allegedly obscene materials.

The United States Supreme Court held in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), that obscenity is not protected by the freedoms of speech and press and may be regulated by the States. This decision was limited in its application in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, (1969), wherein the Court said:

> "We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. *Roth* and the cases following that decision are not impaired by today's holding. As we have said, the States have broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." 394 U.S. 568, 89 S.Ct. 1249–1250.

A three-judge court in Texas held the predecessor of Section 3 [2] unconstitutional on the ground that it made mere possession of obscene material a crime and did not protect private possession as required by *Stanley*. Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex.1969). The amended Article 527 of the Penal Code, applicable to the case now under consideration, proscribes only the sale, distribution or exhibition of obscene materials or their possession with the intent to sell, distribute or exhibit. The amended Article 527 became effective on June 10, 1969—the day after the *Stein* decision was handed down. Mere private possession of obscene materials is no longer prohibited or punishable under Article 527. Therefore, the holding in *Stein* is not applicable to Article 527 as amended.

---

1. See Tex.Const. Art. V, § 3(b) (1869), Tex.Rev.Civ.Stat.Ann. Art. 1738a (1962), Tex.R.Civ.P. 499a.

2. Tex.Laws 1961, Ch. 461, § 1, at 1041.

Two cases which are relevant are Gable v. Jenkins, 309 F.Supp. 998 (N.D.Ga.1969) (Aff'd per curiam, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970), and Newman v. Conover, 313 F.Supp. 623 (N.D.Tex. 1970) (Three-judge courts). In *Gable,* a section of the Georgia Statute [3] prohibiting the distribution of obscene literature was challenged on the ground that it was over-broad under the standard put forth in *Stanley.* The section is very similar to Section 3 of the Texas Statute. A three-judge court upheld the statute as constitutional, stating:

"Obscenity, it was stated in *Roth,* * * is not within the protected pale of the First and Fourteenth Amendments. However, *Stanley* tempers this broad mandate by the allowance of the private possession of obscene materials. As Justice Marshall stated in his concluding paragraph in *Stanley*: 'As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home'. These words indicate a conscious desire on the part of that court to keep *Stanley* limited to its facts and no statements in the body of the opinion could logically be construed to encompass the contention of plaintiff. Plaintiff divines several situations under which the working of 26–2101 might be overly broad, viz., a husband showing an obscene book to his wife, or consenting adults being prohibited from gathering in a private home to view an obscene film. However, as was stated in *Stanley,* 'No such dangers are present in this case' ". 309 F.Supp. 1000–1001.

The United States Supreme Court apparently agrees with this interpretation of *Stanley,* as it affirmed the *Gable* decision. 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970). Newman v. Conover dealt with the same question before this Court, the constitutionality of Article 527 of the Texas Penal Code. The district court, after considering *Roth, Stanley, Stein* and *Gable,* held that: " * * * Section 3 is clearly constitutional." 313 F.Supp. 626.

I would hold that the trial court erred in denying the State's request for a temporary injunction because Section 3 and Section 1(E) fail to differentiate between public and mere private possession or sale, exhibition or distribution. I would interpret the recently amended statute to make that distinction, and hold that the State has a legitimate interest in regulating the public dissemination of obscenity.

## II. *Constitutionality of Section 9*

The State also maintains that the trial court erred in denying the injunctive relief that it sought on the ground that Section 9 of Article 527 is unconstitutional in that it permits the issuance of an *ex parte* search warrant to seize allegedly obscene materials and does not expressly require a prior adversary hearing on the obscene nature of the materials in question before any search, seizure or arrest.

This problem has been fully considered recently by two different three-judge courts in Fontaine v. Dial, 303 F.Supp. 436 (W.D.Tex.1969), and Newman v. Conover, supra. Although *Fontaine* dealt with the procedures used to seize a film under the prior Texas Obscenity Law,[4] the court in a footnote commented upon Section 9 of the recently revised Article 527:

" * * * Even though the revised Act is not directly before this Court, it does

3. Ga.Code 26–2101 (Supp.1968) (effective July 1, 1969):
(a) A person commits the offense of distributing obscene materials when he sells, lends, rents, leases, gives, advertises, publishes, exhibits or otherwise disseminates to any person any obscene material of any description, knowing the obscene nature thereof, or who offers to do so, or who possesses such material with the intent to do so. * * *

4. Tex.Laws 1961, ch. 461, § 6, at 1042. The procedural section itself was not held unconstitutional, but rather the procedures actually employed.

appear that defendants should consider that the prohibition against utilizing the provisions of Section 6 of the prior statute, 'unless a prior adversary hearing is afforded the party against whom "any * * * writs and processes", including but not limited to, search warrants, "appropriate to carry out and enforce * * this Act", are sought', would apply equally to Section 9 of the revised Act." 303 F.Supp. 441, n. 7.

In *Newman* the court was confronted with Section 9 of the present Article 527 and held it unconstitutional, relying on the reasoning of *Fontaine*. It is clear from the holdings of a long line of recent cases that a statute dealing with obscene materials must require an adversary hearing on the issue of obscenity before any warrants to seize material may issue. I would hold that Section 9 of Article 527 is unconstitutional under the Fourteenth Amendment of the United States Constitution in that it specifically authorizes procedures previously held unconstitutional by the United States Supreme Court. Freedman v. Maryland, supra; A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). The unconstitutionality of Section 9 would not, however, affect the validity of the rest of Article 527. Section 9 does not define any substantive obscenity offense and is severable from the rest of Article 527.[5] The striking of this section would in no way prohibit the enforcement of Article 527, for, as the court in *Newman* stated:

" * * * [T]he *Fontaine* case, supra, sets out the correct procedural steps to follow in the enforcement of revised Article 527. Therefore, state officials, in enforcing the substantive sections of Article 527, can adopt such procedures as are sanctioned in *Fontaine, supra*, to secure in a proper manner, evidence in

support of prosecution." 313 F.Supp. 628.

### III. *Constitutionality of Section 1(F)*

The State next claims that the trial court erred in refusing the requested injunctive relief on the grounds that Section 1, Subsection (F), of Article 527 is unconstitutional because it imposes upon a defendant constructive knowledge that the materials involved are obscene.

The United States Supreme Court in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), held a city ordinance unconstitutional which made it unlawful to have possession of obscene books. The California state courts had held that a conviction could be obtained by the state without proving that the possessor of the book had knowledge of its obscenity. Thus, the ordinance that the Supreme Court struck down was a "no scienter" or "strict liability" law. While the court in *Smith* specifically did not define "what sort of mental element is requisite to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock * * *" it did hold that scienter might be proved by circumstances:

"We might observe that it has been some time now since the law viewed itself as impotent to explore the actual state of a man's mind. * * * Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in providing his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." 361 U.S. 154, 80 S.Ct. 219.

In Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), the Court approved the following definition of "knowingly" in the New York Obscenity Statute: " * * * having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry." [6] 390 U.S. 643–644,

---

5. Tex.Laws 1969, ch. 468, § 2, at 1551.

6. N.Y.Laws 1965, ch. 327, § 484–h(g), at 1067.

88 S.Ct. 1274. The Court in Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), also approved a definition of scienter given by the Court of Appeals of New York in People v. Finkelstein, 9 N.Y.2d 342, 214 N.Y.S.2d 363, 174 N.E.2d 470 (1961). They have scienter, said the Court of Appeals: "* * * who are in some manner aware of the character of the material they attempt to distribute * * *. It is not innocent but *calculated purveyance* of filth which is exorcised * * *." 9 N.Y.2d 344–345, 214 N.Y.S.2d 364, 174 N.E.2d 471. (Emphasis added). Section 2 of Article 527 states: "It is not innocent but *calculated purveyance* which is prohibited. * * *." (Emphasis added).

The defendants in their brief claim that all of their patrons "* * * are forewarned and given adequate notice of the nature of the motion picture films being exhibited inside." It would be impossible for the defendants *not* to know the nature, content and character of the films that they display if they are to give an adequate warning which would protect the non-consenting public. In the absence of a true statement of facts, I would not reach the effect, if any, of the so-called warning given by defendants.

A Georgia obscenity statute (since superseded) was recently attacked as being constitutionally deficient in the scienter provision because the statute provided for what is essentially a tort standard of negligence for the criminal intent requisite (as does Section 1(F) of Article 527). A three-judge court upheld the Georgia statute as being within the "*Smith* scienter mandate." Great Speckled Bird of the Atlanta Cooperative News Project v. Stynchcombe, 298 F.Supp. 1291 (N.D.Ga.1969). Very recently, another court upheld a similar attack on the section of the Texas statute in question in this case. Newman v. Conover, supra, 313 F.Supp. 630–631. In

light of the above authorities, I would hold Section 1(F) constitutional.

IV. *Constitutionality of Section 13*

I agree with the Courts' opinion as to Section 13.