James W. SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 26, 1971.

Rehearing Denied May 14, 1971.

Larry D. Raikes, Hodgenville, for appellant.

John B. Breckinridge, Atty. Gen., Robert V. Bullock, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

A jury found appellant guilty of knowingly distributing obscene matter, as denounced by KRS 436.101, and fixed the punishment at a fine of $1,000. Attacking the judgment of conviction, appellant contends that (1) KRS 436.101 is unconstitutional for its failure to prescribe that proscribed material must be "utterly without redeeming social value"; (2) a directed ver-

dict of acquittal was improperly denied; (3) the instructions were erroneous; and (4) the prosecution should have been dismissed because no adversary hearing had been held previously for the purpose of determining contemporary standards applied by the average person in the community and customary limits of candor in the community.

A state trooper paid the appellant $2.50, plus tax, for one copy of a magazine captioned "After Hours." [1] The magazine was openly displayed on a rack in a rural grocery near Elizabethtown. Comic books and routine publications were offered for sale on the same rack, all of the material available to the general public, including minors. The publication, in magazine format, contains about seventy pages inside the front and back covers.

The first "article" in the publication is titled "The Hole Affair." Its text is illustrated by seven photographs, six of which feature the naked female pubic area. These pictures are posed with the woman's legs spread wide apart, so that the subject's pubic hair and vaginal area are given central emphasis.

The next article bears the caption "Take Your Pants Off." A female called "Kate" is revealed in ten photographs. In only one is she clothed. The other pictures show her in varying positions, some of which find her supine on a bed, with her legs widespread and her naked privates depicted in sharp focus. In one scene the motif remains, but the posture is varied to the extent that "Kate" is squatted upon her knees and elbows, presenting a close posterior view of her naked parts.

In an article labeled "Ready to Eat," accompanied by eleven pictures of naked women, the theme is varied to suggest cunnilinguism and fellatio.

Following that appears "Bar Belle's Organ." This is a short piece, consisting of four frontal views of "Belle," alternately posed before a bar and a portable organ. Although the background is varied, the frontal view remains unchanged, as each presents the female, naked, legs wide apart, genitalia featured in close focus. The text is brief, consisting only of: "You don't have to be a musician to play my organ."

Next appears the topic "Any Time Baby," featuring numerous photographs of a female in poses substantially the same as already described.

The "piece de resistance" is the double-page, color photograph of a naked woman lying on her buttocks, legs upraised and widely parted, featuring the distended external orifice of her genital canal. Following that are more articles and photographs, all in the same theme. Some of the stories are entitled: "Eve," "Sucker," "Wet Dream," and "Get Into Me." Sandwiched among these items appears a story called "Shark Shark." This opus purports to relate scientific information about sharks, and is in no sense obscene. It appears as an awkward effort to inject some redeeming value, when its purpose is to provide a subterfuge. Considering the magazine as a whole, the net effect of "Shark Shark" is zero.

In Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793, Mr. Justice Stewart, in an often-recalled separate concurring opinion, wrote of "hard-core pornography":

> "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." Id. 84 S.Ct. at 1683, 12 L.Ed.2d at pp. 803–804.

The members of this court deem the material contained in the issue of "After Hours" under consideration to be "hardcore pornography." Without professing expertise equal to that of Mr. Justice Stewart, the court regards its ken in the

---

1. Identified further only as Vol. 5, No. 2.

premises as adequate for the purpose at hand. The Supreme Court has specifically held that obscenity is not within the freedom of speech and press protection of the First Amendment, United States Constitution. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. "Hard-core pornography" is obscenity, thus beyond the penumbra of the First Amendment.

 KRS 436.101 is not constitutionally infirm by reason of its failure to require that material be "utterly without redeeming social value" before falling within its proscription. This court so held in Cain v. Commonwealth, Ky., 437 S.W.2d 769. Although the Supreme Court reversed the judgment in Cain (after the trial of the present case in circuit court), the reversal appears to rest solely on the Supreme Court's determination that the material in question was not obscene. Cf. Cain v. Kentucky, 397 U.S. 319, 25 L.Ed.2d 334, 90 S.Ct. 1110 (1970). As noted by counsel, there are decisions rejecting the view that an obscenity statute must incorporate "utterly without redeeming social value" in its defining provisions. See Cambist Films, Inc. v. Tribell (E.D.Ky.) 203 F.Supp. 407, upholding KRS 436.101 in face of the same argument. Other decisions reaching the same result include: Grove Press, Inc. v. State of Kansas (D.C. Kan.) 304 F.Supp. 383; State ex rel. Londerholm v. A Quantity of Copies of Books, 197 Kan. 306, 416 P.2d 703; Delta Book Distributors, Inc. v. Cronvich (E.D.La.) 304 F.Supp. 662. The rationale of these decisions is that even though the constitutional standards defining obscenity are not literally incorporated into the obscenity statute, those standards are to be implied whenever the statute is applied. In Stein v. Batchelor (N.D.Tex.) 300 F.Supp. 602, an opposite result was reached. This court is persuaded to the conclusions expressed in those decisions, just cited, which are contrary to the ruling in Stein v. Batchelor, supra.

 Appellant moved for a directed verdict of acquittal at the close of the Commonwealth's evidence, on the ground that no proof had been presented to show that the questioned matter was utterly without redeeming social value. The court properly overruled that motion, inasmuch as the publication demonstrated on its face that it possesed no such redeeming social value. That determination was properly made as a matter of law in the circumstances of this case.

 The third assignment of error is closely related to the one just discussed. Appellant complains that the trial court did not instruct the jury that it must find the matter utterly lacking in redeeming social value as a prerequisite to conviction. Since there was no factual issue on this score, there was no necessity for any instruction on the point. See Montague v. Commonwealth, Ky., 332 S.W.2d 543, and similar holdings collated in West's 6A Ky. Digest, Criminal Law, ⊜814(3).

 The trial court prepared sample verdicts as directed by KRS 436.101(8). Appellant contends that the court should have submitted a special verdict form to the effect that the jury must believe that the defendant had knowledge of the obscenity of the material before it could convict. The instructions to the jury specifically required the jury to find beyond a reasonable doubt that the accused "had knowledge" of the obscenity of the material before any finding of guilt could be had. This clearly required the jury to believe that the defendant had knowledge of the character of the material. It certainly was as favorable to the defendant on the issue as has ever been required.

 Finally, it is contended that the prosecution should have been dismissed because there had been no preliminary adversary hearing in the area to determine contemporary standards applied by the average person in the community. There are decisions relating to required preliminary proceedings before search and seizure warrants may issue for obscene material, but those decisions have no application to a proceed-

ing such as the one on appeal. See *Marcus v. Search Warrants,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127; *A Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed. 809. The material here was purchased. No question of search or seizure is present. There was no need for a prior adversary hearing. *Gable v. Jenkins,* 397 U.S. 592, 25 L.Ed.2d 595, 90 S.Ct. 1351, decided April 20, 1970; for opinion affirmed see 309 F.Supp. 998 (1969).

The judgment is affirmed.

All concur.