The UNIVERSITY OF TEXAS SYSTEM, Appellant,

v.

ROBERT E. McKEE, INC., et al., Appellees.

No. 4772.

Court of Civil Appeals of Texas, Eastland.

April 11, 1975.

Rehearing Denied May 2, 1975.

Bill Campbell, Asst. Atty. Gen., Austin, for appellant.

Joe F. Canterbury, Jr., and Robert W. Smith, Smith, Smith, Dunlap & Canterbury, Dallas, for appellees.

WALTER, Justice.

Robert E. McKee, Inc. and The McCally Company recovered a judgment against The University of Texas System for $174,300.00 and the University has appealed.

The University's statement of the facts is substantially correct and is as follows:

"Appellant advertised for construction of public buildings known as Phase I Expansion Program at the University of Texas Southwestern Medical School at Dallas, located at 5323 Harry Hines Boulevard, Dallas, Texas. The bids were opened on April 20, 1971, with Appellee-McKee as General Contractor, being the successful bidder therefor in the sum of $23,294,800.

Upon acceptance of such bid, Appellant, as owner, and Appellee-McKee, as General Contractor, entered into a prime contract, dated May 4, 1971, whereby Appellee-McKee agreed to build in accordance with the plans and specifica-

tions of Appellant the aforementioned Phase I Expansion Program.

The aforementioned contract contains the following provision: (Added Provisions Governing the Contract)

(A.) SUBCONTRACTS: As soon as practicable and before awarding any subcontracts, the Contractor shall notify the Architect in writing of the names of the subcontractors proposed for the principal parts of the work, and for such other parts as the Architect may direct, *and shall not employ any to whom the Architect or the Owner may have a reasonable objection.*

'If before or after the execution of the Contract a *change* of any subcontractor on such list is required by the Architect or by the Owner prior to the award of the relevant Contract, the Contract Sum shall be increased or decreased by the difference in cost occasioned by such *change.*

'The Contractor shall not be required to employ any subcontractor against whom he has a reasonable objection.

'The Contractor agrees to bind every subcontractor and every subcontractor agrees to be bound by the terms of the Agreement, the General Conditions of the Contract, the Supplementary General Conditions, the Drawings and Specifications as far as applicable to his work, including the following provisions of this article unless specifically noted to the contrary in a subcontract approved in writing as adequate by the Owner or Architect.' (Emphasis Added).

As required by the contract documents, Appellee-McCally, a bidder for the mechanical portion of the prime contract, submitted a list of its subcontractors and material suppliers on the mechanical portions of the work to Appellee-McKee on August 18, 1971. Appellee-McKee, in turn, furnished the list to Appellant, which included the name of All-Temp Insulation Co. for the insulation work.

By contract dated September 1, 1971, Appellee-McKee awarded a subcontract to Appellee-McCally whereby Appellee-McCally agreed to perform all mechanical portions of the work for $4,725,000.

Appellant's engineers undertook an investigation and by letter dated December 10, 1971, notified Appellant that All-Temp Insulation Co. would be an unacceptable subcontractor and recommended its disapproval because (1) All-Temp Insulation Co. had performed unsatisfactory work for previous clients; (2) All-Temp Insulation Co. had never undertaken a project of the magnitude involved; (3) a larger company with more qualifications was needed to properly do a job as large and complicated; and (4) All-Temp Insulation Co. would have to store its materials at an off-site warehouse due to current conditions at the job site.

By letter dated December 23, 1971, Appellant notified Appellee-McKee that All-Temp Insulation Co. was not an acceptable subcontractor for performance of the mechanical covering and insulation work. On or about January 31, 1972, Appellant approved B & B Engineering & Supply Company as insulation subcontractor. On February 16, 1972, Appellee-McCally entered into a subcontract with B & B Engineering & Supply Company to perform the mechanical covering and insulation work for $525,000.

Appellees contend that All-Temp Insulation Co. would have undertaken to perform the insulation work for $359,000. Therefore, demand was made upon Appellant for payment of the difference in

the bid of All-Temp Insulation Co. and the contract with B & B Engineering & Supply Company, plus 5%, or a total of $174,300.

Upon Appellant's refusal to pay to Appellees' demand for $174,300, Appellee instituted this suit on December 21, 1972, almost one year after Appellant notified Appellees that All-Temp Insulation Co. would not be an acceptable subcontractor."

Article 3 of the Contract expressly provides that the "contract sum" to be paid by the Owner to the Contractor for performance of the contract shall under certain conditions, as provided in the contract, be subject to additions and deductions.

In his findings of fact and conclusions of law the court concluded (1) the University did not make an investigation concerning All-Temp until after this law suit was filed; (2) the University did not have reasonable cause to reject All-Temp as the insulation subcontractor; (3) the action of the University in requiring a change from All-Temp Insulation Co. as a subcontractor was unreasonable; (4) on June 14, 1972, U. T. wrongfully rejected the request of McCally and McKee for an increase in contract price due to the rejection by U. T., of All-Temp Insulation Co. and the subsequent approval of B & B to perform the insulation portion of the mechanical work on the Medical School project; (5) that $359,000.00 for which All-Temp agreed to perform the insulation work was a reasonable price for such work; (6) that All-Temp Insulation Co. was a qualified contractor to perform the insulation portion of the mechanical work on the Medical School project; (7) that McKee and McCally are substantial contractors and both stood between the insulation subcontractor on the mechanical work on the Medical School Project and U. T., the Owner, in assuring performance of such work; (8) that pursuant to Paragraph A of the ADDED PROVISIONS GOVERNING

THE CONTRACT, U. T. is obligated to pay the difference in cost occasioned by the rejection of a subcontractor whether such rejection be reasonable or unreasonable, by causing an increase in the Contract Sum of the contract between McKee and U. T. for the benefit of the contractor or subcontractor whose subcontractor is rejected.

We find no merit in the University's contentions that the court erred in finding (1) that All-Temp's bid of $359,000.00 was a reasonable price for such work; (2) that the University did not have reasonable cause to reject All-Temp; and (3) that All-Temp was a qualified contractor.

Mr. Reich, who operated the All-Temp Insulation Company testified he had twenty years of experience in the insulation business and had been doing business as All-Temp Insulation Co. for eleven years and that his bid of $359,000.00 on the Medical School job was a reasonable bid and that it would afford him a reasonable profit. J. E. McCally testified that he had used All-Temp on other projects and it was qualified to do the insulation work on the project. In the University Engineers' Report they recommended disapproval of All-Temp. Their number one objection was as follows:

"From all that we can find out, to date All-Temp does not have a Union contract with Local 21 or 22 which could cause serious delays and shut-downs on the job."

Mr. Morris testified that the University did not rely on their Engineers' report that asserted All-Temp was nonunion. His testimony also reveals that All-Temp was rejected by letter dated December 23, 1971, addressed to McKee and signed by the University's construction manager, Les A. Braun.

■ We hold there was some evidence of probative force to support the court's

finding that the University did not have reasonable cause to reject All-Temp as a qualified contractor.

■ The court's finding that the University did not make an investigation of All-Temp until after this law suit was filed is not supported by the record, however, such finding is immaterial because the stipulation of the parties reveals that All-Temp was rejected by the University. We hold this to be a harmless error. Rule 434, Texas Rules of Civil Procedure.

■ We agree with the court's conclusion of law "that pursuant to Paragraph A of the Added Provisions Governing the Contract, U. T. is obligated to pay the difference in cost occasioned by the rejection of a subcontractor whether such rejection be reasonable or unreasonable, . . ." The University's decision to reject All-Temp, required McCally to make a change from All-Temp to B & B. The cost to McCally for such change was $166,000.00.

■ The University contends that Article 3, § 44 of the State Constitution, Vernon's Ann.St., prohibits the payment of this sum of money to McKee and McCally. Appellees contend that under Rule 94, T. R.C.P., the University was required to plead this constitutional provision as an affirmative defense. No such affirmative defense was pleaded by the University. The appellees contend such defense is waived. Article 3, § 44 of the State Constitution is as follows:

"The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or

otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

In City of South Houston v. Sears, 488 S.W.2d 169 (Tex.Civ.App.—Houston (14th Dist.) 1972, no writ), the court said:

"It is true that Rule 94, Tex.R.Civ.P., does not specifically mention 'unconstitutionality' as an affirmative defense, but it is also true that the list of affirmative defenses is not limited to those expressly enumerated therein. It also includes '. . . any other matter constituting an avoidance or affirmative defense.' As with illegality, there is no indication on the face of plaintiff's petition of any unconstitutionality. Unconstitutionality, as here argued, is asserted to avoid liability and as a defense to the contract. Though not expressly elaborating on this point the opinion of the Texas Supreme Court in State v. Scott, 460 S.W.2d 103, 107 (Tex.Sup.1970), cert. denied, 402 U.S. 1012, 91 S.Ct. 2188, 29 L.Ed.2d 435 (1971), gives support to the conclusion that unconstitutionality is an affirmative defense within the meaning of the rule."

In Byrd v. City of Dallas, 118 Tex. 28, 6 S.W.2d 738 (1928), the court in discussing section 44 of Article 3 of the State Constitution and other provisions of the Constitution said:

"Without discussing in detail these provisions of the Constitution, it is sufficient to say each of them is intended to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual, corporation, or purpose whatsoever."

Even if this defense had been properly pleaded by the University, it would not constitute a bar to appellees' recovery because no gratuity is involved in this controversy.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.